UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SHAWN PLATT, | ) | Case No.: 1:10 CV 1107 |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| LAMRITE WEST, INC., | ) | |
| | ) | |
| Defendant | ) | ORDER |

Currently pending in the above-captioned case are: (1) Plaintiff Shawn Platt's ("Platt" or "Plaintiff") Motion for Summary Judgment (ECF No. 21); and (2) Defendant Lamrite West, Inc.'s ("Lamrite" or "Defendant") Motion for Summary Judgment (ECF No. 19). For the reasons that follow, Defendant's Motion for Summary Judgment is granted in part and denied in part, and Plaintiff's Motion for Summary Judgment is denied.

## I. FACTS AND PROCEDURAL HISTORY

### A. Plaintiff's Employment with Defendant

Defendant is a family-owned business that operates a chain of retail craft stores and a warehouse in Strongsville, Ohio, where it receives, packages, and ships various types of craft merchandise. (Br. in Supp. of Def.'s Mot. for Summ. J., ECF No. 19-1, at 1.) Defendant employed Plaintiff as a second shift, warehouse stockman from February 5, 2002 until his termination on February 26, 2010. (Platt Dep., ECF No. 18-1, at 9:21-10:15; Thompson Decl., ECF No. 19-6, at

1.)  Plaintiff's work duties included stocking, pulling orders, unloading containers, and cleaning. (Platt Dep., at 22:22-23:2.)

Herman Speck ("Speck") is Defendant's Director of Human Resources and the immediate supervisor of Pamela Thompson ("Thompson").  (Thompson Dep., ECF No. 24, at 5.)  Thompson is Defendant's Human Resources Manager.  (Thompson Decl., at 1.)  Thompson was responsible for the administration of Defendant's Family Medical Leave Act ("FMLA") policy and process during Plaintiff's employment and made decisions regarding employment terminations of warehouse employees.  (*Id.*)  John Szuch ("Szuch"), a Human Resource Generalist, reports to Thompson and is responsible for the hiring and recruiting for the warehouse, warehouse employee relations, and monitoring attendance.  (Thompson Dep., at 12:17-25.)  Scott Cross ("Cross") was Plaintiff's supervisor during the time Plaintiff was employed by Defendant.  (Platt Dep., at 22:17-21.)

Defendant publishes its employment policies, including its FMLA policy, attendance, call-off, no-call/no-show, and immediate dismissal policies in its employee handbook.  (Def.'s Employee Handbook, ECF No. 19-3, at 9, 10, 19-23.)  Plaintiff received a copy of the employee handbook when he was hired and received periodic updates of Defendant's policies.  (Platt Dep., at 17:9-14, 19:11-15.)  Plaintiff admits that he read and received the employee handbook and periodic revisions and updates.  (*Id.* at 62:3-7.)  Defendant's call-off procedure requires an employee to advise his supervisor of his status each day that he is absent.  (Def.'s Employee Handbook, at 10.)  Moreover, Defendant assumes that an employee will report for work on his next scheduled day if the employee has not contacted and otherwise advised his supervisor.  (*Id.*)  Defendant's no-call/no-show policy states that "absence without reporting to your supervisor for three consecutive scheduled work days will be considered a voluntary resignation."  (*Id.*)

-2-

During his employment with Defendant, Plaintiff was disciplined for violating safety rules and for poor attendance.  (*Id.* at 69:16-24.)  Plaintiff was given a final warning for unacceptable attendance on February 8, 2010, and on February 9, 2010, Plaintiff was told during his annual performance review that he needed to improve his attendance.  (*Id.* at 69:25-70:2, 73:11-24.)

### B.  February 2010 FMLA Leave

Plaintiff took off February 11 and February 12, 2010, as vacation days to have eye surgery, and Defendant approved the leave.  (Platt Dep., at 48:10-50:22.)  On February 15, 2010, Plaintiff's eye was still bothering him, so he contacted Cross to tell him he would not be into work.  (*Id.* at 57:8-13, 52:22-53:7.)  That same day, Plaintiff called his doctor and scheduled an appointment for February 18.  (*Id.* at 57:21-58:10.)  There is disputed evidence as to whether Plaintiff contacted Defendant on February 16, 2010.  Plaintiff initially asserted in his Deposition that he did not report for work or contact Defendant on February 16 or February 17.  (*Id.* at 82:8-10.)  However, in his Motion for Summary Judgment, Plaintiff acknowledges that he did contact Szuch on February 16, 2010 and told Szuch that he would not be into work, inquired whether he should use vacation or personal time for his absence and told Szuch he would be going to the doctor on February 18.  (Pl.'s Mot. for Summ. J., ECF No. 21, at 3 ("On **February 16**, Platt called John Szuch . . . .  In Platt's February 16 voicemail, he told Szuch that he had something removed from his eye and would not be at work.  Platt stated to Szuch that he did not know[]what to do, and asked Szuch if he should use[] vacation or personal time.") (emphasis in the original).)  Thompson, Szuch and Cross agree that Plaintiff left a voicemail message for Szuch on February 16, 2010, which was also to be relayed to Cross, stating that he was still having trouble with his eye, and that he was going back to the doctor on February 18.  (Thompson Dep., at 8:2-8; Szuch Dep., at 6:16-7:6; Cross Dep. at 11:20-

12:6.) Szuch responded to Plaintiff's February 16 call with a voicemail, stating that Plaintiff would need to bring in a doctor's release note stating when he was able to return to work and that if his status changed, to inform Defendant.  (Szuch Dep., ECF No. 23, at 6:23-7:13.)

On February 18, 2010, Plaintiff called Szuch and left a message stating that he was having complications with his eye and needed more time off.  (Platt Dep., at 82:11-19.)  Also on February 18, Plaintiff's doctor issued Plaintiff a return to work certificate, indicating that Plaintiff could return to work on February 22, 2010.[1]  (*Id.* at 86:14-25.)  Szuch returned Plaintiff's call that same day and asked Plaintiff to bring in a doctor's note on February 22.  (Platt Decl., ECF No. 21-1, at 1.)  Szuch again only made a general request for information regarding Plaintiff's condition and inquired whether there were any changes.  According to Plaintiff, Szuch did not specifically request that Plaintiff provide him with daily updates or call-ins.  (*Id.*)

Thompson subsequently sent Plaintiff a letter, which Plaintiff received on February 20, 2010 advising him that "this letter serves as notification that your time away from work will be counted towards your FMLA leave, commencing on February 11, 2010."  (FMLA Letter, ECF No. 25, at 1.)  Thompson's letter included a FMLA request form, which was to be completed and returned by February 26, 2010, and a FMLA healthcare provider certification, which was to be returned and completed by March 8, 2010.  (FMLA Letter, at 1.)  The FMLA request form contained a section labeled "Conditions of Family or Medical Leave," which stated that "I understand that I must comply with all of the Company's call-in procedures and must advise my supervisor or Human Resource representative if an absence is related to this request for FMLA leave."  (*Id.* at 4.)

---

[1]  The doctor's return to work date erroneously reads "1/22/2010."  (Certificate to Return to Work, ECF No. 25, at 7.)  Dr. Lynk intended the return to work date to read February 22, 2010.  (Platt Decl., at 1.)

On February 22, 2010, Plaintiff left another message for Szuch stating that he had received the FMLA paperwork, that his eye was still bothering him, that he had scheduled a doctor's appointment for the next day and would call Szuch after the appointment with an update.  (Platt Dep., at 99:16-103:20; Platt Phone Call Notes, ECF No.  25, at 10.)  At the visit, Plaintiff maintains that his doctor agreed that Plaintiff needed additional time off and agreed to complete the healthcare provider certification and return it to Plaintiff before the March 8 deadline.  (Platt Decl., at 1.)

Plaintiff admits that he did not call Szuch on February 23, as promised, and did not contact Defendant again until March 3, 2010. (Platt Dep., at 103:17-104:13; Platt Phone Call Notes, at 10.) Plaintiff alleges that he believed that he did not need to contact the company further because he was conditionally on an approved FMLA leave of absence subject to timely return of the completed forms.  (Platt Decl., at 1.)  On February 25, 2010, Thompson learned that Plaintiff did not call or show up for work for the third consecutive day.  (Thompson Decl., at ¶ 7.)  On the morning of February 26, 2010, Thompson decided to terminate Plaintiff's employment for violating the no-call/no-show policy.  (*Id.*)

In the afternoon of February 26, Plaintiff faxed the FMLA leave request form to Thompson, on which he requested leave through March 1, 2010 with an expected return date of March 2, 2010. (FMLA Request Form, at 3.)  Plaintiff also attached his doctor's work-release form to his FMLA leave request, indicating that he could return to work on February 22, 2010.  (Cert. to Return to Work, at 7.)

Plaintiff contacted Defendant on March 3, 2010, and left another message for Szuch apologizing for having missed his return to work date of March 2 and stating that he had an appointment with his doctor on March 9, 2010.  (Platt Dep., at 104:6-21; Platt Phone Call Notes, at

10.) After receiving Plaintiff's last message, Thompson and Szuch called Plaintiff on March 5, 2010 to inform him that he had voluntarily abandoned his job by not returning to work or calling Defendant on February 23, 24, and 25, 2010. (Platt Dep., at 122:9-123:13; Phone Call Memo, ECF No. 25, at 12.)  During the phone call, Plaintiff repeated to Szuch and Thompson that he needed additional leave. (Platt Decl., at 2.)

Plaintiff's healthcare insurance was cancelled as a result of his termination, and thus, Plaintiff cancelled his March 9 doctor's appointment. (*Id.* at 3.)  However, the doctor's office agreed to reschedule his appointment on March 11 for a reduced rate. (*Id.*)  Plaintiff alleges that his doctor officially cleared him to return to work on March 11. (*Id.*)  Plaintiff further alleges that he obtained a completed healthcare provider certification from his doctor so that he would have official documentation that his claim for leave under FMLA was legitimate, should Defendant consider reinstatement of his position. (*Id.*)

### C.  Past FMLA Leaves of Absence

Plaintiff took five FMLA leaves of absence prior to his discharge on February 26, 2010. (Br. in Supp. of Def.'s Mot. for Summ. J., at 8-9.)  Facts about whether Plaintiff had to provide a planned return to work date in the past are in dispute.  Defendant contends that during each of Plaintiff's first five FMLA leaves, Plaintiff provided Defendant with a date on which he planned to return to work, and that if he needed to extend his leave beyond the originally estimated date, Plaintiff advised Defendant of the amended date. (*Id.* at 10.)  Plaintiff states the same in his Deposition. (Platt Depo., p. 56:5-16 ("**Q.** Now, you had taken FMLA leave five times prior, correct? **A.** Yes. **Q.** And each of those times [you] indicated a time when you would start leave and a date that you expected to return, correct?" **A.** Yes. **Q.** So that the company could plan around your absence, correct? **A.** .

. . Yes."); Platt Dep., at 118:10-20 ("**Q.**  In your five previous FMLA leaves, you had provided the

company with a date you planned to come back to work, correct? **A.**  Yes.  **Q.**  And sometimes those

dates weren't exact and your doctor changed them correct? **A.**  Yes.  **Q.**  But the company knew

when you were going to be gone and when they could expect you to return, correct? **A.**  Yes.").)

However, in Plaintiff's Declaration, he maintains that Defendant repeatedly did not enforce the

requirement to notify it of Plaintiff's return date.  (Platt Decl., ECF No. 21-1, at 2-3.)  Specifically,

Plaintiff asserts that he did not give a "definite/expected return-to-work date" for his March 31,

2005, October 27, 2005, December 13, 2006, September 2007, or January 2008 FMLA leave.  (*Id.*

¶¶ 15-19.)

However, Plaintiff consistently maintained  in his Deposition that he was not required to call

in every day when he took FMLA leave in the past.  (Platt Dep., at 117:13-118:7 (**Q.**  . . . Are you

saying that this leave in February 2010 somehow was different from your FMLA leaves you had

taken before? **A.**  No, it is not.  It is still FMLA.  I have never had to -- like I stated, I never had to

call in before every other day or every day to say 'I am not going to be in.'  Once I received my

FMLA paperwork, I filled it out, I faxed it.  I was under the impression that under my rights, I was

under the FMLA Act."); Platt Decl. ¶ 8 ("I have taken several FMLA leaves of absence from LWI

in the past, and neither Pamela Thompson nor any other company representatives required me to call

off from work on a daily basis."); *Id.* ¶¶ 15-19.)

### D.  Procedural History

Plaintiff filed a complaint in the Cuyahoga Court of Common Pleas on April 1, 2010 alleging

that Defendant interfered with his rights under FMLA and that his discharge was in violation of

FMLA.  (Compl., ECF No. 1-1.)  Defendant removed this action to this court on May 17, 2010

pursuant to 28 U.S.C. § 1441.  (Def.'s Notice of Removal, ECF No. 1-2, at 1.)  Plaintiff seeks a declaratory judgment that Defendant's conduct violated the FMLA, an order compelling Defendant to cease and desist committing FMLA violations against Plaintiff and its other employees, full reinstatement to his position or an equivalent position, and damages in excess of $25,000.  (Compl., at 7-8.)  In response to Plaintiff's allegations, Defendant argues that it did not violate the FMLA and Plaintiff was terminated for the legitimate, non-retaliatory reason that he violated Defendant's call-off policy.  (Answer, ECF No. 4, at 8-9.)

Both parties have moved for summary judgment on all the claims before the court.  (Def.'s Mot. for Summ. J., ECF No. 19-1, at 22; Pl.'s Mot. for Summ. J., ECF No. 21, at 22.)  Additionally, Plaintiff has requested that the court schedule a separate hearing as to whether Defendant acted in good faith and to determine the amount of damages to which Plaintiff is allegedly entitled.  (Pl.'s Mot. for Summ. J., at 22.)

## II.  SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) governs summary judgment motions and provides:

> A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. . . .

A party asserting there is no genuine dispute as to any material fact or that a fact is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In reviewing summary judgment motions, this court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943-44 (6th Cir. 1990).  A fact is "material" only if its resolution will affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards.  Thus, in most cases the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict."  *Id*. at 252.  However, "[c]redibility judgments and  weighing of the evidence are prohibited during the consideration of a motion for summary judgment."  *Ahlers v. Scheibil*, 188 F.3d 365, 369 (6th Cir. 1999).

The moving party has the burden of production to make a prima facie showing that it is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). If the burden of persuasion at trial would be on the non-moving party, then the moving party can meet its burden of production by either: (1) submitting "affirmative evidence that negates an essential element of the nonmoving party's claim"; or (2) demonstrating "to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim."  *Id*.

If the moving party meets its burden of production, then the non-moving party is under an affirmative duty to point out specific facts in the record which create a genuine issue of material fact.

*Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992).  The non-movant must show "more than a scintilla of evidence to overcome summary judgment"; it is not enough to show that there is slight doubt as to material facts.  *Id*.  Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact."  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)).

### III.  LAW AND ANALYSIS

### A.  FMLA Overview

The FMLA allows an eligible employee to take medical leave for a serious health condition that deprives the employee of the ability to perform the functions of his job.  29 U.S.C. § 2612(a)(1)(D); *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 553-54 (6th Cir. 2006). However, FMLA leave is not unconditional.  *Killian*, 454 F.3d at 554.  According to the Sixth Circuit, "[a]n employee who requests FMLA leave would have no greater protection against his or her employment being terminated for reasons not related to his or her FMLA request than he or she did before submitting that request."  *Arban v. West Publ'g Corp.*, 345 F.3d 390, 401 (6th Cir. 2003) (citing *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1262 (10th Cir. 1998)).  In other words, "an employee lawfully may be dismissed, preventing him from exercising his statutory rights to FMLA leave . . . but only if the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave."  *Id.*

The Sixth Circuit has held that:

> [t]o garner [FMLA] benefit[s], an employee must abide by the conditions provided in 29 U.S.C. § 2613, which provides, *inter alia*, that an employer may require an employee to submit a doctor's certification of the employee's condition.  In addition, an employer may require an

-10-

> employee to report "periodically" on her status and her intention to return to work. The employer may also require the employee to "obtain subsequent recertifications on a reasonable basis."

*Killian*, 454 F.3d at 554 (citations omitted).   Furthermore, the employer "may take appropriate action under its internal rules and procedures for failure to follow its usual and customary notification rules," as long as the employer has not waived the employee's obligations under its internal leave rules.  29 C.F.R. § 825.304(e).  Pursuant to 29 C.F.R. § 825.302(g) and § 825.304(e), an employer may waive an employee's FMLA notice obligations or the employer's own internal rules on leave notice requirements.

## B.  Interference

### 1. Standard

There are two theories of recovery under the FMLA.  *Arban*, 345 F.3d at 400.  The first of these theories is the "entitlement" or "interference" theory under 29 U.S.C. § 2615(a)(1), which states that "it shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided in this subchapter."  The Sixth Circuit established that the employer's intent is not relevant to the analysis of an FMLA interference claim.  *Edgar v. JAC Prods.*, 443 F.3d 501, 507 (6th Cir. 2006).  In other words, "the mere occurrence of interference with an employee's FMLA rights is not a *per se* FMLA violation."  *Allen v. Butler Cnty. Comm'rs*, 331 F. App'x 389, 394 (6th Cir. 2009).

In order to establish a prima facie case of interference under the FMLA, an employee must establish, by a preponderance of evidence, that: (1) he was an eligible employee; (2) the defendant was an employer; (3) employee was entitled to FMLA leave; (4) the defendant had notice of employee's intent to take leave; and (5) the defendant denied employee's FMLA benefits to which

-11-

he was entitled. *Madoffe v. Safelite Solutions, LLC*, No. 2:06 cv 771, 2008 U.S. Dist. LEXIS 22525, at *17 (6th Cir. Mar. 21, 2008) (citing *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005); *Cavin v. Honda of America Mfg., Inc.*, 346 F.3d 173, 719 (6th Cir. 2003)). In *Wysong v. Dow Chemical*, the Sixth Circuit explained that when "an employer takes an employment action based, in whole or in part, on the fact that the employee took FMLA-protected leave, the employer has denied the employee a benefit to which he is entitled." *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 447 (6th Cir. 2007).

### 2. Analysis

The first, second and fourth prongs of the FMLA interference prima facie standard, namely that Plaintiff was an eligible employee, that Defendant was his employer, and that the Defendant received notice of Plaintiff's intent to take leave, are not at issue. The parties contest the third and fifth prongs, whether Plaintiff was entitled to FMLA leave and whether Defendant denied Plaintiff's benefits.

### (a) Defendant's Argument

Defendant argues that Plaintiff was not entitled to FMLA benefits because Plaintiff violated a condition of his FMLA leave by failing to observe Defendant's daily call-off and no-call/no-show procedures. Defendant also contends that Plaintiff received and read Defendant's call-off, no-call/no-show, and leave policies and Plaintiff was advised in the FMLA request form that compliance with Defendant's attendance policies was a condition of his FMLA leave. Moreover, Defendant presents evidence that Plaintiff complied with all of its attendance policies during his five previous FMLA-qualifying leaves, which demonstrates that Plaintiff understood the policies. (Platt Dep., at 56:4-14, 117:1-118:20.)

### (b) Plaintiff's Waiver Argument based on Prior Five FMLA Requests

Plaintiff maintains that Defendant waived its right to hold Plaintiff to its attendance policy.

Plaintiff argues that because Defendant did not hold Plaintiff to daily call-off requirements during

his five previous FMLA leaves, Defendant cannot require Plaintiff to follow that policy in February

2010.  However, Defendant did not terminate Plaintiff simply because he did not comply with the

daily call-off requirement.  Defendant explains that:

> Lamrite's calloff policies, for which Platt was discharged, only
> required that Platt report to work when predicted by the employee or
> his doctor, or advise that additional leave is needed, or call off on a
> daily basis so Lamrite knew Platt's status and whether he would be
> reporting to work. (Platt Tr. pp. 59, 61-62, 64, 66; Def. Exh. B, p. 13,
> 15, 31, 34). In his MSJ, however, Platt alleges that Lamrite never
> required him to call in on a daily basis during his five previous FMLA
> leaves. Platt is correct in this assertion. Platt was not required to call in
> on a daily basis during his prior leaves because, as he testified during
> his deposition, during every one of these earlier leaves, Platt notified
> Lamrite of his expected return to date or his need for additional leave
> and did not go AWOL for three consecutive days. (Platt Tr. p. 34, 36,
> 38, 39, 42-43, 46, 118). . . . And even assuming, *arguendo*, that the
> statements in Platt's declaration are true (which they are not and
> should not be considered by the Court because they are contradicted by
> Platt's own deposition testimony), he still fails to establish that Lamrite
> somehow waived its established three-day call-off requirement because
> he neither establishes nor claims that Lamrite permitted him not to
> report to work, not to call off and not to advise Lamrite of his work
> status for three consecutive work days during any one of these five
> leaves. (Platt Declaration ¶¶ 1-19). While Platt may have failed to call
> in or advise his status for one or two days, at most, during his prior five
> FMLA leaves, he does not even claim in his declaration that he was
> absent without advising Lamrite of his status for three consecutive
> days like he admittedly was on February 23 – 26, 2010 and for which
> his employment was terminated. (*Id.*).  And, to the contrary, Platt
> testified that during each and every one of these leaves, Lamrite was
> aware of his status. (Platt Tr. p. 36, 38, 39, 42-43, 46, 118).

(Def.'s Br. in Opp., ECF No. 30-1 at 6-8.)  Further, Thompson explained in her Deposition that

Defendant required either a known return-to-work date, or for the person on leave to call in daily.

(Thompson Depo., ECF No. 24 at 25 ("Q.  At some point, [is] an employee who is seeking

unforeseeable [leave under the] Family Medical Leave Act, relieved from an obligation to call in on a daily basis? A.  Yes.  They would not be required to call in on a daily basis if we knew, in advance, that they would need, let's just say the next day, the next week off.  Q.  So you're saying unless the employee can give a set date as to when he or she will return, then that employee would be obligated to call in every single day he or she is out to confirm that they're taking family medical leave? A.  If we didn't know that they were going to need family medical leave, yes, they would need to call off.").)

Plaintiff maintains in his Declaration that he was not required to provide a definite or expected return-to-work date when he took FMLA before February 2010.  (Platt Decl. ¶¶ 16-19.) However, in Plaintiff's Deposition, he states that he told Defendant both the start date of his leave and his expected return date all five times that he took FMLA leave in the past.  (Platt Depo., at 56:5-16 ("**Q.**  Now, you had taken FMLA leave five times prior, correct? **A.**  Yes.  **Q.**  And each of those times [you] indicated a time when you would start leave and a date that you expected to return, correct?" **A.**  Yes.  **Q.**  So that the company could plan around your absence, correct? **A.** . . . Yes.").) Because Plaintiff has definitively addressed this issue in his Deposition, he may not "raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony." *Biechele v. Cedar Point, Inc.*, 747 F.2d 209, 215 (6th Cir. 1984); *see also Penny v. UPS*, 128 F.3d 408, 415 (6th Cir. 1997) (citing *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986)).

The court therefore finds that Plaintiff cannot maintain its argument that Defendant's actions relating to Plaintiff's past five FMLA requests prevent Defendant from enforcing the call-in policy in February 2010.  Plaintiff is unable to show that Defendant's actions in the past five FMLA situations are inconsistent with its actions in February 2010.  As a result, Plaintiff's Motion for Summary Judgment is denied in this regard.

-14-

**(c) Plaintiff's Argument based on Defendant's Actions during February 2010**

Plaintiff also argues that even if the past FMLA leaves did not waive any requirements to adhere to a call-in policy, Defendant's actions during the week of February 15, 2010 did.  Plaintiff argues that he relied on paperwork given to him by Thompson.  The paperwork included an FMLA instructional latter, a fact sheet, a Request for Family or Medical Leave form, and a FMLA Certification of Health Care Provider.  Thompson gave Plaintiff until February 26 to complete the Request for Leave form and a March 8 deadline to obtain the Certification of Health Care Provider from a physician.  (Platt Decl., ¶ 5.)  The FMLA request form contained a section labeled "Conditions of Family or Medical Leave," which stated that "I understand that I must comply with all of the Company's call-in procedures and must advise my supervisor or Human Resource representative if an absence is related to this request for FMLA leave."  (FMLA Letter, at 4.)  Plaintiff argues that he had no reason to know that he should read this information until the night before it was due, which was when he and his wife filled out the paperwork.

In essence, Plaintiff's argument is that after he was given paperwork by Thompson and told to fill it out by February 26, 2010, he was under the impression that he and Defendant were in agreement on what procedures Plaintiff needed to follow in order to obtain FMLA leave.  (*See* Platt Depo. at 115-116.)  Plaintiff maintains that he had no reason to believe that he should follow the call-in policy given that Thompson told him to fill out the paperwork by certain dates.  Plaintiff also contends that Szuch only instructed Plaintiff to contact Defendant if there were any changes in Plaintiff's status and that he was never told that he needed to provide Defendant with daily call-ins or updates.  (Pl.'s Mot. for Summ. J., ECF No. 21, at 3, citing (Szuch Tr., at 7 ("I returned [Plaintiff's] phone call and I left him a message stating that he needed to bring in a doctor's release

note stating that he was able to return to work.  And if . . . his status was going to change, other than that, to let us know.").)

The court finds that there is a genuine issue of material fact as to whether Plaintiff was required to call-in to Defendant on February 23, 24, and 25, 2010 or in the alternative, provide a more definitive return-to-work date.  A finder-of-fact could determine that Plaintiff was reasonable in assuming that by being given paperwork to complete by certain deadlines, Plaintiff and Defendant had reached an agreement as to the process for receiving FMLA leave.  In other words, even though the FMLA request form contains a reference to Defendant's attendance policies, Plaintiff may have received mixed signals from Defendant as to his call-off obligations following his February 2010 eye surgery, which may constitute a waiver of Defendant's daily call-off and no-call/no-show policies.  On the other hand, a finder-of-fact could reasonably determine that it was not reasonable for Plaintiff to believe that the call-in requirements changed because of the language in the paperwork itself and the language in the Employee Handbook.  Therefore, both Defendant's and Plaintiff's Motion for Summary Judgment on the issue of interference with Plaintiff's FMLA rights are denied.

### C.  Retaliation

### 1.  Standard

"Retaliation" or "discrimination" is the second theory of FMLA recovery under 29 U.S.C. § 2615(a)(2), which provides that "it shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."  In contrast to interference claims, "the employer's motive *is* an integral part of the analysis" of a FMLA retaliation claim.  *Edgar*, 443 F.3d at 508.

-16-

Retaliation claims may be based on direct or indirect evidence. *See Madoffe*, 2008 U.S. Dist. LEXIS 22525, at *18. Direct evidence of FMLA retaliation "proves the existence of improper discriminatory animus without inference or presumption." *Id.* (citing *Joostberns v. UPS, Inc.*, 166 F. App'x 783, 791-92 (6th Cir. 2006)). In reviewing a claim for FMLA retaliation through indirect evidence, the Sixth Circuit applies the burden-shifting analysis established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Madoffe*, 2008 U.S. Dist. LEXIS 22525, at *20 (citing *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 313-16 (6th Cir. 2001)).

> Under *McDonnell Douglas*, a plaintiff must first prove a prima facie case of retaliation. The burden then shifts to the defendant to articulate a legitimate, non-retaliatory reason for the plaintiff's discharge. If the defendant articulates such a reason, then the plaintiff has the burden of showing that the articulated reason is in reality a pretext to mask retaliation.

*Id.* at *20 (internal citations omitted). Although this analysis shifts the burden between the parties, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981).

A prima facie case of FMLA retaliation has been established where a plaintiff has shown that: (1) he availed himself of a protected right under the FMLA by notifying his employer of his intent to take leave; (2) he was adversely affected by an employment decision; and (3) the two actions are causally connected. *Skrjanc*, 272 F.3d at 314.

Temporal proximity may be considered to show a causal connection, but not in all circumstances. *See Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 524 (6th Cir.2008) ("[N]one [of our precedents] squarely stands for the proposition that temporal proximity alone may never

-17-

show a causal connection."); *Moore v. KUKA Welding Sys.*, 171 F.3d 1073, 1080 (6th Cir.1999) ("The causal connection . . . may be established by demonstrating that the adverse action was taken shortly after plaintiff filed the complaint [with the EEOC] and by showing that he was treated differently from other employees"); *DiCarlo v. Potter*, 358 F.3d 408, 421 (6th Cir.2004) ("[T]his Circuit has embraced the premise that in certain distinct cases where the temporal proximity between the protected activity and the adverse employment action is acutely near in time, that close proximity is deemed indirect evidence such as to permit an inference of retaliation to arise."); *Asmo v. Keane, Inc.*, 471 F.3d 588, 593 (6th Cir.2006) ("Temporal proximity can establish a causal connection between the protected activity and the unlawful employment action in the retaliation context."); *Bell v. Prefix, Inc.*, 321 F. App'x 423, 426–27, 430 (6th Cir.2009) ("Bell has made a prima facie case. His termination was an adverse employment action, and the close temporal proximity between Bell's leave and his termination in this case suffices for the showing of causal connection necessary at this stage of the inquiry."); *Nguyen v. City of Cleveland,* 229 F.3d 559, 566 (6th Cir. 2000) ("[T]he fact of temporal proximity alone was not particularly compelling, because the plaintiff's retaliation case was otherwise weak, and there was substantial evidence supporting the defendant's version of the events. More importantly, however, while there may be circumstances where evidence of temporal proximity alone would be sufficient to support that inference, we do not hesitate to say that they have not been presented in this case.").

In response to a proffered legitimate, nondiscriminatory reason for discharge, a plaintiff may establish pretext by showing that the reason: (1) has no basis in fact; (2) did not actually motivate the defendant's challenged conduct; or (3) was insufficient to warrant the challenged conduct. *Cutcher v. Kmart Corp.*, 364 F. App'x 183, 191 (6th Cir. 2010) (citing *Wexler v. White's Fine Furniture*, 317 F. 3d 564, 576 (6th Cir. 2003)).

-18-

## 2.  Analysis

Because Plaintiff has not offered any direct evidence that Defendant retaliated against Plaintiff for seeking FMLA leave, Plaintiff's retaliation claim is based on indirect evidence, and thus, the burden-shifting analysis of *McDonnell Douglas* applies to this case.  The first two prongs of the prima facie standard, whether Plaintiff sought FMLA leave and timely notified Defendant of his intent to take leave, and whether Plaintiff was terminated, are not at issue.  However, the court agrees with Defendant that Plaintiff has failed to satisfy the third prong of the test, which requires Plaintiff to demonstrate a causal connection between exercising his right to take FMLA leave and his subsequent termination.

As stated above, in the Sixth Circuit, a plaintiff must show that there is a "causal connection" between his exercise of FMLA rights and his termination.  *Skrjanc*, 272 F.3d at 314.  However, Plaintiff incorrectly relies on the Eleventh Circuit standard that Plaintiff need only show that the exercise of his FMLA rights and his termination were not "wholly unrelated."  (Pl.'s Mot. for Summ. J., at 20.)  In doing so, Plaintiff raises several factual allegations which are insufficient to establish his retaliation claim.   Plaintiff's allegations include: the close timing between Plaintiff's request for FMLA leave and his termination, Defendant's failure to contact Plaintiff when he failed to report for work or notify Defendant, and Defendant's failure to reconsider its decision to terminate Plaintiff after receiving his FMLA request.  As stated above, typically, although not always, a temporal connection must be accompanied with other indicia of retaliatory conduct to create an inference of retaliation.  *Dicarlo,* 358 F.3d at 421.  Plaintiff has not offered evidence of an indicia of retaliatory conduct.  To the contrary, the facts show that Defendant provided Plaintiff with forms to fill out in order to receive FMLA leave, initially approved the leave, and had granted leave in the past.  Therefore, Plaintiff's arguments regarding temporal proximity are unavailing.

Assuming, *arguendo*, that Plaintiff has established a prima facie case of retaliation, Defendant has offered a non-retaliatory reason for Plaintiff's termination, namely that he was terminated for violating Defendant's call-off policy and would have been terminated for violating this policy even if he had not requested FMLA leave.  Defendant's evidence gives credence to Defendant's contention that Plaintiff was not terminated for seeking FMLA benefits in that between 2007 and 2010, 56 warehouse employees were terminated by Defendant for failing to comply with Defendant's attendance policies.  (Thompson Decl., at ¶ 6.)  Like Plaintiff, these former employees were terminated for failing to report to work or notify Defendant for three consecutive work days.  (*Id.*)  Unlike Plaintiff, these former employees did not seek FMLA leave, further supporting Defendant's proffered non-retaliatory grounds for termination.  (*Id.*)  Defendant also approved 104 FMLA leaves of absence to 84 of its employees between 2007 and 2010, and none of the 84 employees were terminated for exercising their FMLA rights.  (*Id.* at ¶ 9.)  As explained above, it is possible that Defendant cannot legally justify its decision to hold Plaintiff to the call-off policy because of the actions Defendant's Human Resources personnel took when explaining FMLA leave in February 2010.  While this may create an interference claim, it does not give rise to a retaliation claim.

Moreover, the parties agree that Defendant did not retaliate against Plaintiff in any way after Plaintiff made his first five FMLA claims.  In *Skrjanc*, 272 F.3d at 315, the Sixth Circuit found that the fact that the plaintiff had taken FMLA leave in the past and returned to work without incident added credibility to the employer's argument that it had discharged the plaintiff for its proffered nondiscriminatory reason.  *Skrjanc*, 272 F.3d at 315.  Here, Defendant's position should be given even more credibility than the employer's position in *Skrjanc*, because Plaintiff returned to work after FMLA leave without incident not on one occasion, but five times.

Further in the alternative, even if Plaintiff had sufficiently alleged a prima facie case of retaliation in violation of the FMLA, Plaintiff would be unable to show that the Defendant's legitimate, non-retaliatory reason was pretextual—that the reason for discharge had no basis in fact, did not actually motivate his termination, or was insufficient to warrant his termination. Defendant's allegation that Plaintiff was fired for failing to report to work and for failing to contact Defendant for three consecutive days in violation of the no-call/no-show policy has a factual basis because Plaintiff admitted that he did not contact Defendant on February 23, 2010, as promised, and did not contact Defendant again until March 3, 2010.  (Platt Dep., at 103:17-104:13.)  Also, Plaintiff has failed to offer sufficient evidence to show that Defendant's motivation in terminating him was for a reason other than Plaintiff's absence from work.  The fact that Plaintiff was never retaliated against for taking FMLA leave in the past, 56 warehouse employees were terminated for violating the no-call/no-show policy, and Defendant granted 104 FMLA leaves of absence to its other employees, all support the Defendant's position that Plaintiff was in fact terminated for violating the no-call/no-show policy.  Finally, Plaintiff cannot show that a violation of Defendant's no-call/no-show policy was insufficient to warrant his discharge because the policy and its potential for voluntary resignation was clearly described in the Defendant's Employee Handbook and the Defendant's attendance policies was incorporated on the FMLA request form as a condition of FMLA leave.  (Def.'s Employee Handbook, at 9, 10, 19-23; FMLA Letter, at 4.)  Plaintiff has presented no evidence to the contrary.  Indeed, he has advanced no evidence to support a finding that Defendant's proffered reason was pretextual.

Accordingly, because Plaintiff has not established a prima facie case of retaliation in violation of the FMLA, the court must grant summary judgment in favor of Defendant and deny summary judgment to Plaintiff on this issue.

-22-

## IV.  CONCLUSION

For the foregoing reasons, the court hereby grants in part and denies in part Defendant's

Motion for Summary Judgment (ECF No. 19) and denies Plaintiff's Motion for Summary Judgment

(ECF No. 21).

IT IS SO ORDERED.

/s/ *SOLOMON OLIVER, JR.*
CHIEF JUDGE
UNITED STATES DISTRICT COURT

August 17, 2011